## VOLUNTEER STATE LIFE INSURANCE COMPANY v. CHAPMAN.

No. 8590. OCTOBER 15, 1931.

*Smith & Ferguson*, for plaintiff in error.

*W. C. Hodges* and *Chalmers Chapman*, contra.

RUSSELL, C. J. The exception in this case is to a judgment granting an interlocutory injunction. The order and opinion of the trial judge granting this relief, quoted below, so sufficiently delineates the facts in the case that further statement thereof is unnecessary.

"Upon considering the above-stated petition for injunction, which was submitted to me by consent of the parties to be heard and determined in vacation, it appears: That on December 1, 1920, Mrs. Elizabeth Williams, through Farmers Land Loan & Title Company, negotiated with the defendant [plaintiff in error] a loan from defendant in the sum of $2000 principal, with interest, and to secure the payment of said loan conveyed to said defendant certain land by her security deed of said date, with power of sale therein authorizing the sale of the land by defendant for the purpose of the payment of the loan in default of payment thereof under the terms of the loan. The said Mrs. Williams paid a part of the principal and interest of the loan, which was paid through the said Farmers Land Loan and Title Company, but was

unable to pay the loan and interest according to the terms of her contract and had defaulted therein. In the meantime the plaintiff, Chalmers Chapman, [defendant in error] wrote the said Farmers Land Loan & Title Company, inquiring the amount due on the loan, received an answer, and after much correspondence finally wrote this company on March 31, 1923, as follows: 'From your statement of some weeks ago I see there is a principal of $1860, which has been running since December 1, 1921. If the proposition of my retiring first this principal of $1860, by my making immediate payment of $1000, to be followed at later intervals by further payments on principal until the same is paid up, with last payment to include such interest at 8% as has accrued in the meantime, with a period of twelve months to complete payments is accepted, notify me at once. I will then send remittance of $1000. I should like to make full payment at once, but my circumstances will not permit my doing so. I hope that above proposition is favorable, as it would be advantageous both to yourself and Mrs. Williams to make a satisfactory agreement.' On April 19, 1923, the defendant wrote this company, Farmers Land Loan & Title Company, in reference to the loan: 'The above matter has had the attention of our finance committee; and offer of $1000 in cash and the balance in twelve months at 8% interest will be accepted, provided borrower agrees to pay a 4% prepayment charge on present unpaid balance of principal, $1860.90 at the time such balance is settled in full. This is in answer to your letter of April 5th.' The letter of this company of April the 5th to the defendant contained the statement (referring to this loan and Mrs. Williams): 'She has a relative who is a student at Mercer University in Macon, who has made us a proposition to pay this loan in full on the following terms: He will pay $1000 cash and the balance within twelve months, at 8% interest.' Thereupon, on April 21st, 1923, the said Loan & Title Company wrote the plaintiff in reference to the loan: 'We are advised by the Volunteer State Life Insurance Company that they will accept payment of the above loan in the sum of $1000 cash and the balance which will be $860.90 in twelve months at 8% interest from date, together with a 4% prepayment charge on the present unpaid balance of principal, which would be $74.44. If this proposition is acceptable to you, please send us your check for $1000, which will be credited to the

principal, and we will send you a receipt for same.' On May 2nd, 1923, the plaintiff wrote, in reference to this loan, this Loan & Title Company as follows: 'In reply to your letter of April 21st, I will say that your proposition is acceptable. In accordance therewith I am enclosing one check for $300. on the Citizens Bank of Ludowici and another one for $700 on the Fourth National Bank of this city, making a total of $1000 as per terms of proposition to be applied to principal of the loan.' These checks were forwarded by the Loan & Title Company to the defendant. This company so notified the plaintiff, but their letter forwarding same to the defendant is not in evidence. However, the defendant received and collected the checks. On May 2, 1923, the plaintiff purchased from the said Mrs. Williams the property conveyed as aforesaid to the defendant, and thereafter from time to time made other payments to the plaintiff on the loan, aggregating in amount more than the total amount of $1860.90 principal, plus prepayment charge of bonus of $74.44 and accruing interest at 8 per cent. per annum, which was paid by plaintiff in accordance with his understanding of his contract with plaintiff [defendant] to retire the loan; and which would, in event his understanding of the contract is correct, be more than sufficient to discharge the loan. But the defendant contended that it did not agree to accept the amount $1860.90 principal plus $74.44 bonus to retire the loan, and insisted after the plaintiff had made the aforesaid payments that there was yet due on the loan, under and according to its contract with Mrs. Williams, above the amounts so paid by the plaintiff, an unpaid balance. The payments of plaintiff, although sufficient to more than discharge the loan according to his understanding of his contract to retire same, were not enough to pay the loan in full as originally made by Mrs. Williams. Hence the defendant, insisting on its right to collect the full amount notwithstanding its contract with plaintiff as aforesaid, advertised the land for sale under the power in the deed, to enforce payment of such balance. Wherefore the plaintiff brought this suit to enjoin defendant from such proceedings.

"There was a mass of correspondence and evidence submitted to me, from which I find the foregoing. The case is not without difficulty. There is no doubt the defendant [plaintiff] purchased the land and undertook to pay off the loan, believing the plaintiff

was agreeing to accept in satisfaction of same $1860.90 plus $74.44 bonus with interest at 8%, which amount he has overpaid. It also seems to me, that considering all the circumstances of the case, that the defendant is bound by such agreement. If not, it does seem, plaintiff having paid his money with such understanding on his part, that the defendant should not in equity, even though it did not so understand the contract at the time of payment, now hold the money paid under such mistake, and at the same time sell the land for a balance that the plaintiff did not assume. Wherefore it is ordered and adjudged that the injunction as prayed for be temporarily granted, and that pending the trial of said case that the defendant be and it is enjoined, as prayed, from selling the land in question."

As appears from the foregoing, the contention of the plaintiff in error is that the amount assumed by the defendant in error on May 2, 1923, was the amount due by Mrs. Elizabeth Williams on this loan at that time, while the defendant in error claims that he only agreed to pay, in settlement of the debt due by Mrs. Williams to the plaintiff in error, the sum of $1860.90, plus an agreed prepayment charge or bonus of $74.44, and that after payment of the $1,000 made by his two checks aggregating that amount, he owed the lender only a balance of $860.90 with interest from May 2, 1923, and the $74.44 prepayment charge. It is urged by counsel for the plaintiff in error in his brief, as to the negotiations between the defendant in error and the Farmers Land Loan & Title Co., that "He made this company either his own agent or treated with it as the agent of Mrs. Williams; and therefore no statement which the Farmers Land Loan & Title Co. may have made to him can, in any way, affect the plaintiff in error." However this may have been at the outset of the negotiations, there is ample evidence to authorize the finding of the lower court that the agreement made by the defendant in error with the Farmers Land Loan & Title Co. was ratified by the Volunteer State Life Insurance Company. The plaintiff in error not only accepted the original payment of $1,000 made in carrying out the agreement made by the defendant in error with the Farmers Land Loan & Title Co., but continued from time to time to receive and obtain the full benefit of other payments. In these circumstances, there would seem to be such a ratification of the original agreement as

to provide a sufficient substitute for reducing the original agreement to a writing in which the parties would have been the plaintiff in error and the defendant in error. Counsel for plaintiff in error and his brief argues that "Chapman was fully advised as to the amount of the unpaid amount of this loan, because, on February 26, 1923, the Volunteer State Life Insurance Co. wrote to the Farmers Land Loan & Title Co., Albany, Ga., a letter setting out the principal and interest due; and immediately thereafter, and on February 28, 1923, D. L. Beaty, president of the Farmers Land Loan & Title Co., wrote to Chalmers Chapman, giving him this itemized statement and detailed information." This is true. But the agreement under which Chapman assumed payment of the debt due the plaintiff in error was entered into more than two months after this letter to Chapman.

The only effect of the judgment of the lower court granting the interlocutory injunction was to prevent the plaintiff in error from exercising the power of sale contained in its deed to secure debt at that time. The contention of the plaintiff in error that the defendant in error assumed payment of the entire amount due by Mrs. Elizabeth Williams to the plaintiff in error on May 2, 1923, and that there is still a balance due thereon of $151, still remains for determination by a jury on the final hearing of the case. Should the plaintiff in error prevail in this trial, it will have as security for this balance the land on which it originally loaned $2,000. The evidence submitted upon the interlocutory hearing would have authorized, though it would not have required, a jury to find in favor of the claim of the defendant in error that the payments made by him to the Volunteer State Life Insurance Co.. had more than paid the amount which he agreed to pay, and which the plaintiff in error agreed to accept in settlement of the claim of the latter against Mrs. Williams; and in the trial now under review the judge of the superior court was the trior of the facts. We can not say that under the pleadings in this case, and the evidence adduced upon the interlocutory hearing now under consideration, the court abused its discretion in granting the interlocutory injunction. This merely holds the matter in statu quo until the issues of fact between the parties can be determined by a jury upon the final trial. "The granting and continuing of injunctions must always rest in the sound discretion of the judge,

according to the circumstances of each case." Civil Code (1910), § 5497. "In hearings upon applications for interlocutory injunctions, where the evidence upon material issues of fact is in conflict, the grant or refusal of applications is within the discretion of the chancellor, and the exercise of his discretion in granting or refusing the relief prayed for will not be controlled unless manifestly abused." *Sapp* v. *Ritch*, 169 *Ga.* 33 (2) (149 S. E. 636).

*Judgment affirmed. All the Justices concur.*