WILLIAM W. HOWARD et al., Respondents, *v.* THE CITY OF NEW YORK, Appellant.

**Municipal corporations — New York city — policy of legislature to safeguard conduct of business of city departments — statute authorizing purchase and sale of food by municipalities in such manner and through such agencies as authorities may determine — where municipality selects agent to act but fails to prescribe manner in which purchases shall be made, contract entered into by him for purchase of food is void and complaint in action to recover on such contract fails to state cause of action.**

1. Various sections of the charter of the city of New York disclose the safeguards which the legislature intended to adopt and apply to the conduct of the business of city departments, which provisions are not to be repealed or amended by any act of the legislature save by express terms or unmistakable intention. In construing a complaint, therefore, in an action to recover upon a contract entered into by a city official, the general policy of the legislature must be borne

in mind and unless the plaintiffs have clearly brought themselves within the terms and conditions of the statute, under which the contract was made, the action cannot be maintained.

2. By section 14 of chapter 813 of the Laws of 1917 municipalities were authorized in certain emergencies to purchase and store food and sell the same to their inhabitants in such manner and through such agencies as they might determine. In this action against the city of New York to recover the purchase price of goods sold, as alleged, to a city official, designated by the board of aldermen as agent of the city under the act of 1917, the complaint alleged that said official had been authorized by a city ordinance and certain resolutions to purchase and sell food, but failed to allege that the manner in which the purchase and sale were to be made had been determined. As matter of fact the ordinance and resolutions do not prescribe the manner in which purchases were to be made or the goods sold. In the absence of such determination, the agent selected by the authorities was not authorized to substitute his judgment as to the manner of purchase and sale of the goods for that of the authorities to whom such power was expressly granted by statute. The contract of sale was, therefore, void and the complaint does not state a cause of action against the city.

*Howard* v. *City of New York,* 199 App. Div. 596, reversed.

(Re-argued April 18, 1923; decided May 29, 1923.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 13, 1922, which reversed an order of Special Term denying plaintiffs' motion for judgment on the pleadings and sustaining a demurrer to the complaint and granted said motion. (See 234 N. Y. 505.)

*John P. O'Brien, Corporation Counsel, (John F. O'Brien, Henry J. Shields* and *Harold Taylor* of counsel), for appellant. In the absence of defendant's determination of the " manner " in which the power conferred upon it by chapter 813 of the Laws of 1917 should be exercised, the commissioner of markets was without authority to enter into contracts for the purchase of food otherwise than in accordance with the ordinary contract provisions of the charter. (L. 1901, ch. 466, § 1618; *Matter of Hirshfield,* 227 N. Y. 297; *McDonald* v. *Mayor,* 68 N. Y.

23; *Smith* v. *City of Newburgh,* 77 N. Y. 130; *Vil. of Ft. Edward* v. *Fish,* 156 N. Y. 363, 371; *Hart* v. *City of New York,* 201 N. Y. 45, 55.) The complaint does not state facts sufficient to constitute a cause of action because it fails to allege that any " manner " in which the power conferred upon defendant by chapter 813 of the Laws of 1917 could be exercised was ever determined upon by defendant, and because it fails to allege that the commissioner of markets executed his contract with plaintiff either in accordance with some " manner determined upon by defendant " or in accordance with the contract provisions of the charter. (*Matter of Mitchel,* 177 App. Div. 663; *Cagwin* v. *Town of Hancock,* 84 N. Y. 532; *Rosenthal* v. *Rubin,* 148 App. Div. 44; *Ainsworth* v. *Acheson Harden Co.,* 172 App. Div. 723; *Elmhurst Fire Co.* v. *City of N. Y.,* 213 N. Y. 87.)

*Douglas Mathewson* and *Henry H. Spitz* for respondents. It was not the legislative intent to make the exercise of the emergency powers delegated by the state by and pursuant to the provisions of chapter 813 of the Laws of 1917, so far as exercised in and by the city of New York, subject to the charter provisions. (L. 1917, ch. 813, § 4; L. 1901, ch. 466, § 1541; *Mayor, etc.,* v. *Sands,* 105 N. Y. 210.) Chapter 813 of the Laws of 1917, by fair construction of its terms, authorized such a sale and purchase as is alleged in the first cause of action, without regard to the provisions and restrictions of the charter, and the sale alleged, by the respondent Howard to the appellant city, acting in its governmental capacity, through its legally appointed special agent, Jonathan C. Day, the commissioner of public markets of the appellant city, was authorized by law, and the appellant city is bound by the terms of such sale and purchase and is legally obligated to pay the balance of the purchase price for the food sold. (*Moore* v. *Mayor, etc.,* 73 N. Y. 238; *Kramrath* v. *City of Albany,* 127 N. Y. 575; *Town of*

*Hempstead* v. *Lawrence,* 138 App. Div. 473; *Village of Haverstraw* v. *Eckerson,* 124 App. Div. 18; *Union Free School District* v. *Village of Glen Park,* 109 App. Div. 414; *Williams* v. *Village of Portchester,* 97 App. Div. 84; 183 N. Y. 550; *Barry* v. *Village of Port Jervis,* 64 App. Div. 268; *Ackert* v. *City of New York,* 156 App. Div. 836.) If chapter 813 of the Laws of 1917, and acts performed pursuant to the provisions thereof, were not entirely apart from and independent of the Greater New York charter, then the 1917 act, at least, impliedly repealed or suspended the operation of the charter provisions in so far as they would have been a limitation and restriction upon the exercise of powers conferred by the Emergency Act except in the one instance provided for in the act, *i. e.,* the issue of special revenue bonds to meet expense incurred pursuant to the provisions of the act. (*Matter of Taxpayers of Plattsburgh,* 157 N. Y. 78; *Aultman & Taylor Co.* v. *Syme,* 163 N. Y. 54; *Barringer* v. *Powell,* 183 App. Div. 666, 669; *People* v. *Delaware & Hudson Co.,* 183 App. Div. 149; *People ex rel. McCann* v. *Kilbourn,* 68 N. Y. 479; *City of Buffalo* v. *Lewis,* 192 N. Y. 193; *Smith* v. *People,* 47 N. Y. 330; *People ex rel. Cooke* v. *Wood,* 71 N. Y. 371; *Matter of Brigham* v. *City of New York,* 227 N. Y. 575; *People* v. *Schultz,* 149 App. Div. 844; *People ex rel. Fleming* v. *Dalton,* 158 N. Y. 175.)

HOGAN, J. The Appellate Division in its order permitting an appeal to this court, certified the following question for review: " Does the complaint herein state facts sufficient to constitute a cause of action against the defendant? "

Preliminary to a review of the allegations of the complaint reference must needs be made to certain provisions of chapter 813, Laws of 1917, upon which the plaintiffs base their right to maintain this action.

Chapter 813, Laws of 1917, was passed at an extraor-

dinary session of the legislature. The act is entitled: "An act to define the policy of the state of New York in relation to the production, supply and control of the distribution of the necessaries of life, to insure an adequate supply thereof at a reasonable price, to prevent unreasonable profits by reason of speculation, to extend such policy in aid of the national government in providing for the national security and defense, to amend the farms and markets law in relation to markets in cities, and to transfer the powers and duties conferred on a commission by chapters two hundred and five and five hundred and six of the laws of nineteen hundred and seventeen to the commission created by this act."

The statute then provided for the creation of a state food commission. Section 4 reads: " Matters of public interest during a state of war. During the existence of a state of war, the production, manufacture, marketing, storage, accumulation, distribution, supply, waste, hoarding, destruction, cost to producers and distributors, price to consumers, and the expense of handling necessaries, are matters of public interest and proper subjects for investigation, encouragement, development, regulation and control by the state to the end that while such state of war exists, the people of the state may, in common with the people of other states, have an adequate supply of pure and wholesome food, their health be protected, their energies conserved, and that they may not suffer from the excessive cost, unreasonable prices or speculation in the necessaries of life."

Section 14 provides: " Purchase and sale of food and fuel by municipalities. Any municipality in this state may, in case of an actual or anticipated emergency on account of a deprivation of necessaries, by reason of excessive charges or otherwise, purchase food and fuel with municipal funds or on municipal credit, and provide storage for and sell the same to its inhabitants in such manner and through such agencies as it may determine,

but before the exercise of any such power or authority by any municipality, it shall have the consent in writing from the state food commission to exercise such power. The mayor, if any, and the governing body or bodies of any such municipality shall file with the state food commission a resolution and certificate stating that such a necessity has arisen in said municipality, and otherwise satisfy the state food commission that such a necessity exists. The state food commission shall act upon the application as in its judgment the public interest requires, and may prescribe such regulations and restrictions as it deems wise.

" Special revenue bonds may be issued by the city comptroller for the purposes of this section in any city which issues such bonds and the same shall be issued in the manner provided by the city charter or other act applicable thereto."

The complaint alleges that on October 17, 1917, the board of estimate and apportionment of the city of New York, pursuant to section 14 of the Laws of 1917, chapter 813, adopted a resolution in effect that by reason of a shortage in the supply of, and excessive charges for, milk, meats, other foods and fuel, an emergency exists which requires that the city purchase such enumerated articles, provide storage for and sell the same to the inhabitants of the city. That on October 23d the board of aldermen of the city adopted a resolution wherein it certified pursuant to section 14 of the same law that on account of the deprivation of necessaries for life and shortage in the supply of and excessive charges for milk, meats, other foods and fuel an emergency exists which requires that the city purchase and provide storage for said articles and sell the same to the inhabitants, which resolution was approved by the mayor. That the resolutions mentioned were filed with the state food commission and said commission on November 1, 1917, granted the application and consented that the city might exercise the power of

purchasing food and fuel with municipal funds and on municipal credit, procure storage for the same and sell to the inhabitants of the city through such agencies as it might determine until further order of the commission.

That thereafter the commissioner of public markets of the city was designated by the board of aldermen as the agent of the city, for the purpose stated and the resolution of the board of aldermen was approved by the mayor January 7, 1918. That plaintiffs in February, 1918, during the continuance of the emergency, by an agreement in writing sold to the commissioner of public markets of the city acting as agent, etc., a cargo of salt herring from a schooner at an agreed price of seven and one-half cents a pound and delivered the same alongside the city pier East river, where defendant accepted the same and the cargo was stored. That the cargo aggregated 348,766 pounds which at the agreed price amounted to $26,157.45 upon which $2,801.25 had been paid, leaving due and unpaid $23,356.20 for which a claim was presented to the comptroller which that officer has refused to pay.

A second cause of action set out in the complaint realleges all allegations of the first cause of action and seeks to recover $1,860 for delay in unloading the schooner.

Judgment was demanded for $25,216.20 and interest.

Numerous provisions will be found in the charter of the city relating to the expenditure of public funds. The commissioner of public charities is required to advertise for proposals for necessaries for the relief and support of the poor, and in case of emergency may purchase without competitive bidding only to the extent of three thousand dollars per month. (Section 675.) The commissioner of corrections is required to advertise for supplies and in case of an emergency may purchase without competition to an amount not to exceed two thousand dollars per month. (Section 704.) The board of health in the presence of great and imminent peril to the public health

by reason of impending pestilence may make expenditures beyond those provided for with written consent of two members of the board and the mayor. (Section 1178.) Additional sections as to contracts for work, supplies, departments, etc., are contained in the charter (Sections 149, 419, 1541.) Finally section 1618 provides that any section or provision of the charter shall not be deemed to be repealed or amended by any act of the legislature unless it be so expressly stated or the legislative intent to that effect is unmistakable.

The various sections of the charter referred to, particularly the provisions relating to the powers of the commissioner of public charities, the commissioner of correction in cases of emergency, and of the board of health in the presence of great and imminent peril to the public health by reason of impending pestilence and providing a limitation upon the bodies mentioned discloses the safeguards that the legislature intended to adopt and apply to the conduct of the business of each and every department of the city, and which provisions were not to be repealed or amended by any act of the legislature, save by express terms or by unmistakable intention. The justice at Special Term held that the provisions of the charter were not repealed by the statute, chapter 917, Laws of 1917, and sustained the demurrer. The Appellate Division held to the contrary and directed judgment for plaintiffs.

In a consideration of the question presented upon this appeal by defendant the general policy of the legislature as disclosed in the provisions of the charter of the city must be borne in mind in a construction of the complaint in this action and unless the plaintiffs have clearly brought themselves within the terms and conditions of the statute, even assuming the statute to be constitutional and the provisions of the charter inapplicable, questions we deem unnecessary to pass upon, the plaintiffs cannot maintain this action.

By section 14 of the statute the city was permitted to purchase and store food and sell the same to its inhabitants in such *manner* and through such agencies *as it may determine.* The city authorities did determine the agency through which a purchase and sale should be made, but failed to determine the manner in which the purchase and sale were to be made. The resolutions of the board of estimate and apportionment and of the board of aldermen do not prescribe the manner in which purchases were to be made or the goods sold. In the absence of such determination by the municipality the agent selected by the authorities was not authorized to substitute his judgment as to the manner of purchase and sale of the goods for that of the municipal authorities to whom such power was expressly granted by the statute. A holding to the contrary would result in unlimited authority to purchase or contract to purchase untold quantities of goods uncontrolled as to price or extent which was clearly foreign to the express language of the statute. The municipal authorities having omitted to determine the manner in which the goods were to be purchased, or the manner in which the goods were to be sold other than to the inhabitants of the city, the agent selected was unauthorized to enter into a contract with plaintiffs. The complaint does not allege action of the municipal authorities in compliance with the terms of the statute, but on the contrary, the action of the municipal authorities set forth in the complaint negatives compliance with the statute.

The order of the Appellate Division should be reversed, and order of Special Term affirmed, and the question certified answered in the negative, with costs in this court and the Appellate Division.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur; ANDREWS, J., concurs in result.

Order reversed, etc.