Edward F. Crawford, J.
This action was tried before the court without a jury. The parties stipulated to the admissibility of the exhibits received in evidence. Syrtel Building, Inc., a business corporation, hereafter referred to as “ Syrtel ”, brought suit against the City of Syracuse for breach of contract alleging damages of $34,022, being the amount expended by plaintiff to install sidewalks along the city streets and about the building constructed by plaintiff on premises purchased from
*781 the defendant. The sidewalks were installed subsequent to the payment by the plaintiff to the City of Syracuse of the sum of $612,200 as the purchase price of the premises and subsequent to the construction of a building by plaintiff and the refusal by the city to install the sidewalk. Section 10-a of chapter 684 of the Laws of 1905, as added by Local Law No. 25 of the City of Syracuse for 1949, as amended by Local Law No. 15 of the City of Syracuse for 1952 and as further amended by Local Law No. 12 of 1954, controls the rights and duties as between the City of Syracuse and property owners therein insofar as installation of sidewalks is concerned. Except as provided therein, the cost of all sidewalk installation is to be assessed back to the abutting property owner. Section 10-a provides in part that: ‘1 the common council may also by ordinance with like approval of the board of estimate authorize the construction or reconstruction of sidewalks * * * at locations other than in city streets * * * wholly as a general city charge.”
In a laudable and generally successful effect to renew the business section of the city, the city, in 1969, undertook to put together a parcel of land to be acquired by the plaintiff for the purpose of constructing a new office building containing more than 200,000 square feet of floor space to be used to house offices of the telephone company. Such building was constructed by plaintiff thereby incidentally benefiting the city by adding value to the tax rolls and improving the appearance of the downtown area. The issue in this case is whether or not the city is bound by the terms of a contract entered into between it and the plaintiff prior to the sale of land which purportedly was executed pursuant to the terms of Local Law No. 6 of 1969, as passed by the Common Council, approved by the Mayor, and duly filed with the Secretary of State. The contract was executed on December 29, 1969 by the Mayor with the approval of the Corporation Counsel who represented by certification affixed to the contract that the Mayor provided that 41 the purchase price for the premises is $612,200.” and that “ as part of the consideration for this Agreement, Purchaser agrees to construct upon the premises * * * an initial structure containing at least 200,000 square feet of space ”. It further provided that: ‘£ The City agrees that it will effect all abandonment or relocation of existing utilities and facilities without any charge to the Purchaser and that all replacement and extension of sidewalks and curbs over the abandoned portions of East Genesee Street where required and wherever otherwise required shall be effected by the City at no charge to the Purchaser *782 * * * the foregoing requirements on the part of the City shall survive the transfer of title ’ \ The problem is that Local Law No. 6, effective December 18, 1969, failed to mention the term sidewalk at all. Said local law did authorize the city by the Mayor and City Clerk “ to execute and deliver formal contracts ” to and between the parties “ containing in substance ” certain specified terms and conditions among which were that Syrtel would pay “ a total purchase price as follows: (1) For city block 55, the sum of $610,000. (2) For parcel adjoining block 55 on the west at the rate of $20 per square foot.” The latter parcel contained 110 square feet. In a separately labeled section of the local law, section 4, the Common Council provided that: “ The contract or contracts, documents and other instruments authorized hereunder shall contain such other and further provisions and agreements as the corporation counsel may deem to be in the best interests of the city of Syracuse to effectuate the purposes of the local law and as the corporation counsel shall approve as to form, legality and manner of execution.”
The court holds that the city is not bound by the terms of the contract insofar as the sidewalks are concerned by reason of the fact that the contract provision relative to sidewalks was not within the power of the Mayor to enter into absent more specific authorization by the Common Council; the power to contract relative to sidewalks and even to put them in without charge was doubtless vested in the city by section 10-a of chapter 684 of the Laws of 1905, as added by Local Law No. 25 of 1949 and amended by Local Law No. 12 of 1954, but it was a power granted to the Common Council subject to Board of Estimate approval and it is the opinion of the court that the general authorization by the Common Council, if intended to cover sidewalks, was an invalid delegation of legislative power; the court further holds that the city should, under the circumstances of this case, not be estopped with respect to the issue of the validity of the provision relative to sidewalks.
The power of the city with respect to the authorization to install sidewalks was definitely vested in the Common Council by the State Legislature. The court has difficulty construing Local Law No. 6 so as to delegate power or authority to the Corporation Counsel or Mayor with respect to sidewalks, but, assuming that it does, the court deems it a general delegation of the discretion which the Legislature saw fit to vest within the Common Council alone. Where the exercise of judgment and discretion and the power to burden the public treasury have been so vested by the Legislature, they may not be delegated *783 wholesale. (Phelps v. Mayor etc. of City of New York, 112 N. Y. 216; Howard v. City of New York, 236 N. Y. 91; Westchester Elec. R. R. Co. v. Angevine, 52 App. Div. 239.) Persons dealing with a municipal corporation are charged by the law with the knowledge of the extent of the powers of such municipal corporations and their officers. (McDonald v. Mayor etc. of City of New York, 68 N. Y. 23; Matter of Niland v. Bowron, 193 N. Y. 180; Steiner Egg Noodle Co. v. City of New York, 63 Misc 2d 163.) It is arguable whether there was any valid consideration passing to the city for the installation of the sidewalks. The language of Local Law No. 6 and the contract is persuasive that the $612,200 figure is the figure agreed upon for the cost of the land alone. The court assumes that the plaintiff and its representatives reviewed or should have reviewed Local Law No. 6 which was referred to in the contract. Neither it nor the contract specifically implies a recognition by the city of an obligation to expend such a significant sum as $34,022 for sidewalks. Under all the circumstances, the court does not believe that the plaintiff had a sufficient right to rely upon the representation made to it by the Corporation Counsel that the Mayor-had power to contract on behalf of the city with respect to sidewalks. The doctrine of equitable estoppel, while concededly applicable to municipal corporations (Abells v. City of Syracuse, 7 App. Div. 501; Planet Constr. Corp. v. Board of Educ. of City of N. Y., 7 N Y 2d 381) may not, in the court’s judgment, be applied in this case. (New York City Employees’ Retirement System v. Eliot, 267 N. Y. 193.) It is a doctrine only reluctantly employed by the courts against municipalities and, then, generally, only when the variation between the action and the power of the municipality has been slight. (Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167; Wells v. Town of Salina, 119 N. Y. 280; Kramrath v. City of Albany, 127 N. Y. 575; Wooley v. City of Schenectady, 226 App. Div. 383; Seif v. City of Long Beach, 286 N. Y. 382.) As the court stated in Lutzken v. City of Rochester (7 A D 2d 498, 499, 501): “ Public policy, however, dictates that in the interest of protecting all of the taxpayers it is imperative that certain formalities be established in the form of ordinances and statutes to prevent careless and loose dealings by persons charged with the responsibility of purchasing services or commodities for a municipal entity. No municipality should have the power or right to waive or disregard requirements which have been properly determined to be in the interest of the whole, as opposed to the equitable considerations which one might be inclined to extend to one who has, *784 even in good faith, failed to follow the prescribed rules • where there is a lack of authority on the part of agents of a municipal corporation to create a liability, except by compliance with well-established regulations, no liability can result unless the prescribed procedure is complied with and followed.” Judgment is awarded in favor of the defendant and against the plaintiff dismissing the plaintiff’s complaint.